UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Paul E. D'Amico (R-16190), (a/k/a Paul E. Wheeler),<br><br>Petitioner,<br><br>v.<br><br>Justin Wilks, Acting Warden, Dixon Correctional Center,<br><br>Respondent. | Case No. 1:21-cv-03013<br><br>Judge Mary M. Rowland |

**MEMORANDUM AND OPINION ORDER**

Petitioner Paul E. D'Amico, a prisoner at the Dixon Correctional Center brings a petition under 28 U.S.C. § 2254 challenging his Kane County conviction for one count of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse. [1]. Respondent answered the petition, and Petitioner replied. For the following reasons, the Court denies the Section 2254 petition.

**Background & Procedural History**

When addressing a Section 2254 petition, federal courts "take facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. 2254(e)(1)). The facts below come from the appellate court's order in Petitioner's appeal following his trial. *See People v. D'Amico*, 2018 IL App (2d) 180157, 2020 WL 3839692 (July 8, 2020), *appeal denied*, 159 N.E.3d 957 (Ill. 2020).

1

Petitioner's jury trial began on April 17, 2017. *D'Amico*, 2018 IL App (2d) 180157, ¶ 4.

P.M., the victim, testified that Petitioner was her mother's friend. *Id.* ¶ 5. As a child, P.M. spent the night at Petitioner's home—a single-story white house—on two occasions. *Id.* On the first occasion, P.M. spent the night with her brother, Petitioner, and Petitioner's girlfriend. *Id.* P.M. remembers being put in timeout, where she fell asleep standing up in the corner. *Id.* P.M. recalled that Petitioner had a son who was at the home on one of those two occasions, but that Petitioner's son did not stay overnight. *Id.*

The second occasion occurred sometime during the winter of 2005, when P.M. was seven years old. *Id.* ¶ 6. That night only the Petitioner and Petitioner's girlfriend stayed in the house with her. *Id.* During the night, P.M. agreed to come with Petitioner to plow snow; they drove to the home of Petitioner's boss to pick up a snowplow truck. *Id.* While waiting for the snowplow truck to warm up, Petitioner asked P.M. if she wanted to "fake drive" the truck. *Id.* She told him yes and sat on Petitioner's lap, whereupon she felt Petitioner rubbing his penis on her. *Id.* P.M. felt uncomfortable and asked to sit back in the passenger seat. *Id.* After leaving Petitioner's boss' house, P.M. fell asleep. *Id.*

P.M. testified that she woke up at the Chicago Street train station in Elgin. *Id.* ¶ 7. As she was waking up, Petitioner was hurrying to move his hand away from inside of her pants. *Id.* P.M. asked what he was doing, and he replied, "Nothing, just go back to sleep." *Id.* P.M. said she freaked out and acted as though she was still

2

sleeping, eventually falling in and out of sleep. *Id.* When she awoke again, Petitioner was touching her again, with his right hand in her pants, and his fingers in her vagina. *Id.* P.M. testified that it hurt and she was crying. *Id.* Petitioner then told her that no one would believe her, and P.M. asked him to stop. *Id.* Petitioner stopped and drove them back to his home. *Id.* P.M. did not spend any more time with the Petitioner after that night. *Id.*

At trial, P.M. testified that she did not immediately tell an adult about what happened because she was scared. *Id.* ¶ 8. P.M. did, however, tell her cousin about what happened when she was around 10 years old; she told her father and his wife when she was 11 years old; and she eventually told her mother and a house mother at the Mooseheart boarding school. *Id.* P.M. stated that she also told her high school principal about what had happened with Petitioner, but she had not told other adults because the people she had told before did not believe her. *Id.*

P.M.'s mother, Melissa Gibbons, testified that, in addition to P.M., she also had a son. *Id.* ¶ 9. Gibbons testified that she had known Petitioner since childhood, when she was 16, and that Petitioner had eventually become a male figure in her son's life. *Id.* By the time P.M. was six or seven years old, Petitioner had taken P.M.'s brother on a few outings; and Gibbons let P.M. spend time at Petitioner's home on two occasions, spending the night on one of those occasions. *Id.* Gibbons recalled that Petitioner lived in a white ranch style home "out west" either in De Kalb or McHenry County. *Id.*

3

Gibbons also testified that after those two occasions, Gibbons and P.M. saw Petitioner at the Sycamore Speedway; when P.M. saw Petitioner, "she didn't want to go anywhere near him." *Id.* Gibbons stated that she first learned about what had happened to P.M. after P.M. told her father who then told Gibbons. *Id.* Gibbons testified that P.M. would have been about eight or nine years old. *Id.* Gibbons then tried to take P.M. to the police station, but P.M. refused to get out of the car. *Id.*

Petitioner's mother, Barbara Skruggs, testified that Petitioner had lived at two houses in DeKalb Illinois, from 2003 to 2007: a single-story home with gray siding and maroon shutters, and a brown two-story home with a deck on the back; Petitioner did not live in a white house. *Id.* ¶ 10. Petitioner had two daughters, one who was born in 1998 and another who was born in 2005; Petitioner did not have a son. *Id.*

In closing arguments, the State emphasized that P.M.'s testimony about the assault was unrebutted and argued that inconsistencies as to "little facts" did not matter in light of the unrebutted testimony. *Id.* ¶ 11. Defense counsel argued that P.M. was not credible, placing particular emphasis on P.M.'s inconsistent testimony regarding the location and color of Petitioner's home, Petitioner's inconsistent claims that she saw Petitioner's son at his home on the night of the assault, even though Petitioner did not have a son, and that the State failed to produce any medical, physical, or forensic evidence. *Id.* In rebuttal, the State argued that P.M. testified credibly, arguing that P.M. had no motive to make false allegations against him. *Id.* Defense counsel did not object at any point during the State's closing argument or rebuttal. *Id.*

4

The jury found Petitioner guilty on one count of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse. *Id.* ¶¶ 2, 11. Petitioner received consecutive sentences of six years' imprisonment on the predatory criminal sexual assault count and three years' imprisonment on the aggravated criminal sexual abuse count. *Id.* ¶ 11.

Petitioner filed a post-trial motion for mistrial and for judgment of acquittal notwithstanding the verdict. *Id.* ¶ 12. Petitioner argued, among other things, that the State's comments during closing arguments regarding the unrebutted nature of P.M.'s testimony violated his Fifth Amendment right against self-incrimination and improperly shifted the burden onto Petitioner to prove his innocence. *Id.* The trial court denied Petitioner's motion as untimely due to defense counsel's failure to object at trial, and stated that even if defense counsel had objected, the State's comments were fair in light of the evidence. *Id.* ¶ 13.

On direct appeal, Petitioner argued that: (1) the prosecution's remarks on closing arguments violated his Fifth Amendment right to not testify and improperly shifted the burden of proof to Petitioner; and (2) his trial attorney's failure to object to the prosecution's "improper remarks" constituted ineffective assistance of counsel. *Id.* ¶¶ 16, 19. The appellate court rejected these arguments and affirmed the trial court's judgment. *Id.* ¶¶ 1, 42–43.

Petitioner filed a petition for leave to appeal (PLA) to the Illinois Supreme Court. *See* [11-6]. The court denied the PLA in November 2020. *People v. D'Amico*, 159 N.E.3d 957 (Ill. 2020).

5

Petitioner then filed his Section 2254 petition in this Court. The petition asserts the following claims:

(1) the prosecutor delivered improper closing argument that violated Petitioner's Fifth amendment right not to testify and improperly shifted the state's burden of proof to the defendant by calling to attention Petitioner's decision not to testify; and,

(2) Petitioner's trial attorney's failure to (a) object to the prosecutor's improper statements during closing argument, and (b) file Petitioner's direct appeal amounted to ineffective assistance of counsel.

[1] at 2–3. Respondent responded to the petition and argued that Petitioner procedurally defaulted both claims, and that even if not procedurally defaulted, the claims fail on their merits. [10]. Petitioner replied. [14]. The Court considers Petitioner's claims below.

## Analysis of Petitioner's Claims

**A.    Claim 1**

Petitioner first argues that the prosecutor delivered improper closing arguments that violated his Fifth Amendment right not to testify and improperly shifted the burden of proof to the Petitioner. [1] at 2–3. Respondent argues that Petitioner procedurally defaulted this claim because the state court rejected Petitioner's claim on the adequate and independent state-law ground of forfeiture. [10] at 7–8. For the reasons explained below, this Court finds that Petitioner has procedurally defaulted this claim.

### 1. Procedural Default Based on Independent and Adequate State Grounds

A federal court's refusal to review a procedurally defaulted habeas petition advances "comity, finality, and federalism interests." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). Relevant to Claim 1, procedural default occurs when state court judgments rest upon adequate and independent state grounds. *Flint v. Carr*, 10 F.4th 786, 793 (7th Cir. 2021); *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). A ground is adequate if it is "firmly established and regularly followed." *Flint*, 10 F.4th at 793 (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). A ground is independent "if it does not depend on the merits of the petitioner's claim." *Id.* (quoting *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021)). When a state refuses to adjudicate a petitioner's federal claims because he did not raise them in accord with the state's procedural rules, "that will normally qualify as an independent and adequate state ground for denying federal review." *Id.* at 794 (quoting *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009)). Forfeiture (or waiver) is "almost always such a ground." *Id.*; *see also Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010); *Faber v. Pfister*, No. 17 C 1318, 2019 WL 6309926, at *3 (N.D. Ill. Nov. 25, 2019) ("Federal courts have long recognized that Illinois' forfeiture (waiver) rule is an independent and adequate state law procedural ground.").

### 2. Petitioner Has Procedurally Defaulted Claim 1

Here, Petitioner has procedurally defaulted Claim 1 because the Illinois appellate court denied it on adequate and independent state forfeiture grounds.

7

On direct appeal, Petitioner argued, as he does here, that the prosecution's comments during closing arguments about Petitioner's decision to not testify violated his Fifth Amendment rights. *D'Amico*, 2018 IL App (2d) 180157-U, ¶ 16. The Illinois appellate court considered and rejected this argument, reasoning that Petitioner "face[d] a forfeiture problem" because his trial counsel's failure "to object to the prosecution's remarks at trial." *Id.* ¶ 18. The appellate court also noted that, although the defendant's trial counsel raised the issue in his post-trial motion, "that is a bit like closing the barn door after the horse has bolted. Instead of being able to address and correct an error at trial, the only option left at that point was to have a new trial." *Id.* Thus, the appellate court actually relied on the procedural bar—forfeiture—as an independent basis for its disposition of Petitioner's Fifth Amendment argument. Further, it is well-established that the contemporaneous objection requirement upon which the appellate court relied constitutes an adequate state law ground. *Kaczmarek*, 627 F.3d at 592. Petitioner has thus procedurally defaulted this claim. *See, e.g., Brown v. Lawrence*, No. 17-CV-2212, 2019 WL 11815324, at *13 (C.D. Ill. Oct. 8, 2019) (finding that the petitioner procedurally defaulted his due process claim based on the trial court's admission of other-crimes evidence because he failed to object to the admission of such evidence at trial), *aff'd sub nom. Brown v. Jones*, 978 F.3d 1029 (7th Cir. 2020).

True, the appellate court reviewed Petitioner's Fifth Amendment claim under the plain error doctrine, finding no error. *D'Amico*, 2018 IL App (2d) 180157-U, ¶ 19 (addressing the petitioner's alternative argument that "this court should review his

8

appeal . . . for plain error"), ¶ 42 (denying reversal of the petitioner's conviction under the plain error doctrine); *see Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (noting that Illinois courts apply a plain error analysis when a defendant fails to make a timely objection at trial). But the fact that the appellate court engaged in plain error review does not cure Petitioner's procedural default. The Seventh Circuit has consistently held "that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar . . . , that limited review does not constitute a decision on the merits." *Kaczmarek*, 527 F.3d at 592; *see also Gray*, 598 F.3d at 329 ("And we have repeatedly explained that where a state court reviews the claim for plain error as the result of a state procedural bar such as the Illinois doctrine of waiver, that limited review does not constitute a decision on the merits."); *Rodriguez v. McAdory*, 318 F.3d 733, 736 (7th Cir. 2003) (holding that the state court's plain error review of the petitioner's claims "did not undo his procedural default"); *see also Thomas v. Watson*, No. 12 C 5373, 2020 WL 1701883, at *5 (N.D. Ill. Apr. 8, 2020) (observing that "forfeiture is an adequate and independent state ground compelling a finding of procedural default, even where the state court has undergone a limited review for plain error") (internal quotation marks omitted). Consequently, the appellate court's plain error analysis does not cure Petitioner's procedural default.

Because Petitioner's Claim 1 is procedurally defaulted, this Court denies habeas relief on this claim and declines to consider its merits. *See Flint*, 10 F.4th at 793 (noting that procedural default bars consideration of the merits of a habeas claim).

9

**B.     Claim 2**

On Claim 2, Petitioner argues that his trial counsel rendered constitutionally ineffective assistance of counsel in two instances: first, when counsel failed to object to the prosecution's comments during closing arguments; and second, when counsel failed to file a direct appeal after telling Petitioner he would do so. [1] at 3. Respondent argues that Petitioner procedurally defaulted both instances due to his failure to exhaust state court review. [10] at 11, 18. For the reasons explained below, this Court agrees that Petitioner has procedurally defaulted Claim 2.

   **1.     Procedural Default Based on Failure to Exhaust**

A petitioner procedurally defaults a habeas claim if he fails to exhaust that claim, or in other words, when he fails to fairly present his claim to the state courts, regardless of whether he initially preserved it with an objection at the trial level. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). To fairly present his claim, a petitioner "must assert that claim throughout at least one complete round of state-court review." *Id.*; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). In Illinois, that means that petitioner must have presented the claim both to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

Initially, Petitioner urges this Court to set aside the procedural default rule for a petitioner's failure to exhaust because it "is a doctrine adhered to by the courts to conserve judicial resources" and does not bind this Court. [14] at 3 (quoting *Massaro*

10

*v. United States*, 538 U.S. 500, 504 (2003)). The case upon which Petitioner relies, *Massaro*, holds that a defendant in a *federal* criminal prosecution need not raise an ineffective assistance claim on direct appeal; however, this is a "rule of practice for *federal* judges in *federal* criminal cases and does not change the relation between state and federal courts." *Hayes v. Battaglia*, 403 F.3d 935, 937 (7th Cir. 2005) (emphasis added) (citing *Massaro*, 538 U.S. at 504). Petitioner's case, unlike *Massaro*, involves a challenge to a state conviction under Section 2254. *Massaro* thus is inapplicable. *See, e.g.*, *U.S. ex rel. Lewis v. Sternes*, No. 02 C 2905, 2003 WL 22250020, at *4 (N.D. Ill. Oct. 1, 2003) (declining to apply *Massaro* to a Section 2254 petition), *aff'd sub nom. Lewis v. Sternes*, 390 F.3d 1019 (7th Cir. 2004). This Court proceeds to analyze whether Claim 2 is procedurally defaulted.

### a. Petitioner Procedurally Defaulted His Failure-to-Object Theory

In sub-Claim 2(a), Petitioner argues that his trial counsel rendered ineffective assistance due to his failure to object during closing arguments. Respondent argues that Petitioner procedurally defaulted this claim because Petitioner's PLA made only a single passing reference to ineffective assistance of counsel. [10] at 11. This Court agrees.

A habeas petitioner "must fairly present to each appropriate state court" his constitutional claims before seeking federal relief. *Lopez v. Wills*, No. 3:18-CV-50255, 2021 WL 2645565, at *5 (N.D. Ill. June 28, 2021) (quoting *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004)). Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later

11

presented in federal court. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). This rule "requires that the factual and legal substance of the claim remain essentially the same when the petitioner has exhausted his state court remedies and moved on to federal court." *Blackmon v. Williams*, 823 F.3d 1088, 1100 (7th Cir. 2016). A "bare mention of ineffective assistance of counsel" is insufficient to avoid procedural default. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009); *see McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018) ("McGhee had to do more than generally allege ineffective assistance of counsel or broadly challenge the underlying jury-polling issue.").

Here, the Petitioner's PLA brief does not make a substantive argument about ineffective assistance of counsel. Rather, Petitioner mentions ineffective assistance only once and very briefly in his PLA, writing "defendant also claims in this PLA that his conviction should be reversed based on ineffective assistance of counsel." [11-6] at 3. This "bare mention" of ineffective assistance fails to "sufficiently alert the state court" of the issue, and accordingly, does not avoid procedural default. *McGhee*, 900 F.3d at 854. The fact that Petitioner's PLA includes a copy of the appellate court decision discussing ineffective assistance as to Petitioner's trial counsel's failure to cure Petitioner's procedural default. If the state Supreme Court "must read the decision of its appellant court in order to learn what the petitioner is arguing, then the issue has not been preserved for federal decision; a petition must *contain* each contention, and not just point to some other document where it might be located." *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006).

12

Further, Petitioner purports to bring a new claim for ineffective assistance of *appellate* counsel in his response to Respondent's answer—despite not having preserved it by presenting it for review before the state courts. [14] at 4 (arguing that "appellate counsel's failure to raise trial counsel's ineffectiveness on direct appeal, [*sic*] constitutes ineffective assistance of counsel"). To the extent Petitioner attempts to assert appellate counsel was ineffective, this claim is also clearly procedurally defaulted because Petitioner's PLA contains no argument indicating that his appellate counsel rendered constitutionally deficient assistance. *See* [11-6]; *see also, e.g., Baggett v. Pfister*, No. 14 C 2798, 2017 WL 4339793, at *5 (N.D. Ill. Sept. 29, 2017) (concluding that the petitioner procedurally defaulted ineffective assistance of appellate counsel claims by failing to fairly present it in his PLA).

For these reasons, Plaintiff has procedurally defaulted sub-Claim 2(a).

### b. Petitioner Procedurally Defaulted His Failure-to-Appeal Theory

In sub-Claim 2(b), Petitioner argues that trial counsel rendered ineffective assistance when he failed to file an appeal after promising to do so. [1] at 3. This claim, too, is procedurally defaulted because Petitioner did not raise it at any level of the state court review process. *See generally* [11-6]; *D'Amico*, 2018 IL App (2d) 180157-U, ¶ 18. Petitioner's failure to exhaust forecloses federal habeas review on this claim. *Richardson*, 745 F.3d at 268.

### C. Excuse for Procedural Default

A district court may excuse the procedural default only where the petitioner demonstrates either: (1) cause for the default and actual prejudice; or (2) that failure

to consider the claims will result in a fundamental miscarriage of justice. *Snow*, 880 F.3d at 864.

Cause requires Petitioner to show "some type of external impediment" that prevented him from presenting his claims. *Garcia v. Cromwell*, 28 F.4th 764, 775 (7th Cir. 2022) (quoting *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012)). Petitioner has not identified any external impediment that prevented him from fully exhausting his ineffective assistance arguments in Claim 2. On Claim 1, Petitioner argues that there is cause to excuse his failure to contemporaneously object to the prosecutor's comments due to the ineffectiveness of both trial and appellate counsel. [14] at 4. Attorney error can satisfy the cause requirement, but only if "the error amounted to a constitutionally ineffective assistance of counsel." *Davila*, 137 S. Ct. at 2062; *see Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008) ("Attorney error rising to the level of ineffective assistance of counsel can constitute cause to set aside procedural default."). Yet an ineffective assistance claim "asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Karr v. Sevier*, --- F.4th ---- No. 21-2463, 2022 WL 946197, at *9 (7th Cir. Mar. 30, 2022) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)). Because, as explained above, Petitioner's ineffective assistance claim is itself procedurally defaulted, it cannot serve as cause for another default. *See Smith v. Gaetz*, 565 F.3d at 346, 352 (7th Cir. 2009). Petitioner thus has not demonstrated cause to set aside his procedural default of Claim 1.

Nor does Petitioner show any fundamental miscarriage of justice that would excuse his procedural default of either claim. The fundamental miscarriage of justice excuse requires the petitioner to "prove that he is actually innocent of the crime of which he has been convicted." *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013). Tenable actual-innocence pleas are rare: A petitioner "does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner must prove the fundamental miscarriage of justice through new reliable evidence—exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. *Arteaga v. Hammers*, No. 18-CV-03231, 2022 WL 900018, at *6 (N.D. Ill. Mar. 28, 2022) (citing *House v. Bell*, 547 U.S. 518, 537 (2006)). In this case, however, Petitioner neither claims innocence nor presents new evidence for the court to consider. He thus has failed to raise any ground that would excuse his procedural default due to a fundamental miscarriage of justice.

**D.    Certificate of Appealability and Notice of Appeal Rights**

This Court's denial of Petitioner's petition is a final decision ending the case. This Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). Petitioner does not make a substantial showing of the denial of a constitutional right, and reasonable jurists would not debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)).

Petitioner may appeal only if he obtains a certificate of appealability. Here, this Court has already declined to issue a certificate of appealability. Thus, Petitioner must request a certificate of appealability from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

Petitioner must file a notice of appeal in this Court within 30 days judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e); Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

## **Conclusion**

For the reasons explained above, this Court denies Petitioner's habeas corpus petition [1] and declines to issue a certificate of appealability. The Clerk is directed to enter judgment in Respondent's favor and against Petitioner. Civil case terminated.

E N T E R:

Dated: April 13, 2022

_____
MARY M. ROWLAND
United States District Judge